Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRAYDEN STARK and JUDD OOSTYEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No.<br><br>**PLAINTIFFS' MOTION TO COMPEL META PLATFORMS, INC.'S COMPLIANCE WITH SUBPOENA**<br><br>Judge:<br>Date:<br>Time: |
| This Document Relates to:<br><br>*Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131-JCS | |

**(REDACTED VERSION)**

**FILED UNDER SEAL PURSUANT TO**
***STARK, ET AL. V. PATREON, INC.*, NO. 3:22-CV-03131-JCS (N.D. CAL.) PROTECTIVE ORDER**

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. Plaintiffs May Pursue Class Discovery Prior to Certification ........ 7

B. Plaintiffs' Subpoena Seeks Highly Relevant Information Exclusively Within Meta's Possession ........ 8

C. Plaintiffs Have Reduced the Burden of Compliance. ........ 10

V. CONCLUSION ........ 11

i

PLAINTIFFS' MOTION TO COMPEL META PLATFORMS, INC.'S COMPLIANCE WITH SUBPOENA
CASE NO.

## TABLE OF AUTHORITIES

**Cases**

*Am. Broad. Companies, Inc. v. Aereo, Inc.*
2013 WL 1508894 (N.D. Cal. Apr. 10, 2013) .......... 11

*Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*
2018 WL 2215510 (S.D.N.Y. May 15, 2018).......... 7

*Doninger v. Pac. Nw. Bell, Inc.*
564 F.2d 1304 (9th Cir. 1977).......... 7

*Eichenberger v. ESPN, Inc.*
876 F.3d 979 (9th Cir. 2017).......... 9

*Erickson v. Builder Advisor Grp. LLC*
2022 WL 1265823 (N.D. Cal. Apr. 28, 2022) .......... 6

*Gallegos v. Atria Mgmt. Co., LLC*
2017 WL 11743705 (C.D. Cal. Jan. 31, 2017) .......... 7

*Ghanaat v. Numerade Labs, Inc.*
2023 WL 5738391 (N.D. Cal. Aug. 28, 2023).......... 9

*Gonzales v. Google, Inc.*
234 F.R.D. 674 (N.D. Cal. 2006) .......... 9

*HI.Q, Inc. v. ZeetoGroup, LLC*
2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) .......... 10, 11

*HID Glob. Corp. v. Vector Flow, Inc.*
2023 WL 4002722 (N.D. Cal. May 2, 2023) .......... 6

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*
2021 WL 4621755 (N.D. Cal. Oct. 5, 2021).......... 9

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*
2022 WL 620705 (N.D. Cal. Mar. 2, 2022).......... 6

*In re Samsung Elecs. Co, Ltd.*
2022 WL 425579 (N.D. Cal. Feb. 11, 2022) .......... 9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
No. M07-cv-01819-CW (N.D. Cal. Mar. 1, 2010) .......... 11

*In re Subpoena to Third Party Sentieon, Inc.*
2022 WL 17477092 (N.D. Cal. Dec. 6, 2022).......... 6, 7

*Kaminske v. JP Morgan Chase Bank N.A.*
2010 WL 5782995 (C.D. Cal. May 21, 2010) .......... 7

*Mantolete v. Bolger*
767 F.2d 1416 (9th Cir. 1985) .......... 7

*Negotiated Data Sols. LLC v. Dell, Inc.*
2009 WL 733876 (N.D. Cal. Mar. 17, 2009) .......... 10

*Pendleton Woolen Mills, Inc. v. Kraff's Men's Wear Co.*
2014 WL 7777762 (D. Or. Nov. 21, 2014) .......... 10

*Schoonmaker v. City of Eureka*
2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) .......... 11

*Vinole v. Countrywide Home Loans, Inc.*
571 F.3d 935 (9th Cir. 2009) .......... 7

**Rules**

Fed. R. Civ. P. 26 .......... 6

Fed. R. Civ. P. 30 .......... 2, 5, 9, 12

Fed. R. Civ. P. 45 .......... iii, 6, 11

**Statutes**

18 U.S.C. § 2710 .......... iii, 9

**NOTICE OF MOTION AND MOTION**

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(b)(i), Plaintiffs Brayden Stark and Judd Oostyen respectfully seek an order compelling nonparty Meta Platforms, Inc. to comply with Plaintiffs' Subpoena to Produce Documents (the "Subpoena"). Plaintiffs base this motion on the following grounds: (1) the information sought by the Subpoena is relevant and proportional to Plaintiffs' claims and to Defendant Patreon, Inc.'s defenses under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), as a responsive production from Meta will disclose the scope of personal information Patreon transmitted to Meta for purposes of Plaintiffs' VPPA claims; (2) this information is only available from Meta; (3) Plaintiffs require Class member data from Meta to obtain class certification by satisfying elements of Rule 23(a) and (b)(3); and (4) Plaintiffs' motion is narrowly framed to limit Meta's burden of complying with the Subpoena.

This motion and the relief requested are supported by this notice, the attached memorandum, the declaration of Reid Gaa in support of the motion ("Gaa Decl."), the record in the underlying action, any reply in support of the motion, and any further argument or submission permitted by the Court.

Dated: December 13, 2023

By: */s/ Reid Gaa*

Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

## I. INTRODUCTION

Plaintiffs move to enforce their subpoena of nonparty Meta, which owns and operates Facebook. Plaintiffs allege Patreon programmed a tracking tool called the Meta Pixel ("Pixel") onto its website to send information to Meta about Patreon's subscribers and better target them with digital advertisements. The Pixel is a segment of programming code that tracks "events"—users' activities on a website—and transmits this data to Meta.[1] Plaintiffs allege that, by operation of the Pixel that it installed on its website, Patreon sends Meta its subscribers' Facebook IDs ("FID") and the titles of the videos they watched on its website, violating the VPPA. Patreon admits it installed the Pixel[2] but denies that it provided Plaintiffs' identifying information and the titles of the videos they watched to Meta. *See* Gaa Decl., Ex. 16 at ¶¶ 3-5, 46, 47, 51, 56, 62, 66, 71.

The information transmitted by Patreon's Pixel is logged by Meta and, according to Patreon, is not within Patreon's possession, custody, or control. Consequently, this data—which is critical to class certification—can only be obtained from Meta. Although Meta has produced [REDACTED], it has not produced [REDACTED]. Plaintiffs expect that the subpoenaed class-wide data will provide common evidence of Patreon's VPPA violation. As such, the data will be essential to the Court's analysis of Rule 23's predominance requirement. The data also is directly relevant to Rule 23's numerosity and typicality requirements because it will show the number of Patreon subscribers whose data was collected and transmitted by the Pixel over a specific period of time and whether, as Plaintiffs contend, they and all other Class members were similarly injured. The importance of this information has already been highlighted in a similar VPPA case where the defendant argued that a lack of class-wide data from Meta prevented the plaintiffs from satisfying Rule 23. *See* Gaa Decl., Ex. 24; *Bloom, et al. v. Zuffa, LLC, et al.*, Case No. 2:22-cv-00412-RFB-BNW (D. Nev. Nov. 17, 2023), Dkt. No, 106 at 9-10.

---

[1] "Events" include activities such as visiting a particular webpage, viewing content on a webpage, entering payment information, or searching for content on a website. The data corresponding to these tracked events is transmitted by the Pixel and known as "event data."

[2] Gaa Decl., Ex. 16 at ¶¶ 57, 58.

Although Plaintiffs served their Subpoena several months ago, Meta to date has refused to provide the needed class-wide data, despite Plaintiffs' requests. Plaintiffs therefore seek an order compelling Meta to comply by producing, (i) by January 5, 2024, all data and any related datasets, event data, metadata, and documents containing, showing, or summarizing the transmissions that Patreon's Pixel caused to be sent to Meta from April 1, 2022, to July 31, 2022, and (ii) by February 2, 2024, a witness pursuant to Rule 30(b)(6) to testify in a deposition concerning the following topics:

1. The types of data that Meta receives via Patreon's Pixel, including Pixel event data, and any microdata;
2. How Pixel data can be restored, queried, and generated based on specific parameters;
3. How event data and other data that Meta receives via Patreon's Pixel is maintained, stored, and preserved by Meta;
4. The process for matching Facebook IDs with event data transmitted through the Meta Pixel generally, association of Pixel event data with specific Facebook users, and Meta's ability to identify the number of unique Facebook users whose data was transmitted to Meta through the Meta Pixel;
5. How users can be identified through data, including event data, transmitted to Meta via Patreon's Pixel;
6. The transmissions sent to Meta via Patreon's Pixel whenever an individual accessed video content on Patreon's website, and the information included in those transmissions;
7. How Meta uses the information it received via Patreon's Pixel;
8. The time period during which Meta received information via Patreon's Pixel;
9. The reporting that Meta provides using event data received via the Meta Pixel; and
10. The date on which Patreon's Pixel first became active.

## II. <u>BACKGROUND</u>

On February 1, 2023, Plaintiffs served Meta with the Subpoena, noticing a deposition of Meta and seeking, among other information:

> All data and any related datasets, databases, logs, or reports, containing, showing, or summarizing the transmissions that Patreon's Pixel caused to be sent to [Meta] each time an individual accessed video content on Patreon's website or application, including all events and actions recorded.

Gaa Decl., Ex. 1 at 6. The relevant time period for each request is April 1, 2016, when Patreon installed the Pixel on its website, through the date of Meta's responses. Gaa Decl., Ex. 1 at 6.

On February 15, 2023, Meta served Objections and Responses to the Subpoena. Gaa Decl., Ex. 2. Between February and October, Plaintiffs met and conferred with Meta by video conference and phone on several occasions and exchanged numerous emails in an effort to narrow the scope of the Subpoena and determine the parameters of a responsive production that would not impose undue burden. Through this process, Plaintiffs narrowed their requests by agreeing to a number of Meta's requested concessions, while reserving their rights to seek further data and documents if the agreement reached proved insufficient. Gaa Decl., ¶ 5; Exs. 3-5, 21-23.

On May 10 and 11, 2023, Meta and Plaintiffs exchanged initial proposals to narrow the scope of the Subpoena. Gaa Decl., Ex. 3. While Meta initially claimed that it could only access [REDACTED] without incurring unduly burdensome costs, it later revised this position on July 28 and took the position that it could [REDACTED]. Gaa Decl., Ex. 4. After further negotiation, Meta agreed to produce [REDACTED]. Gaa Decl., Ex. 5. In agreeing to this initial production, Plaintiffs reserved the right to seek additional information regarding data transmitted to Meta by Patreon, and reserved their position that Meta provide testimony regarding its receipt, maintenance, storage, ability to query, and use of such data. Gaa Decl., Ex. 5. This initial compromise substantially limited the scope and quantity of information sought from Meta.

On September 22, 2023, Meta produced [REDACTED]. Gaa Decl., Ex. 6. After reviewing the production, Plaintiffs explained to Meta that it was deficient because it omitted [REDACTED]. Gaa Decl., Ex. 7. And, given the deficiencies, Plaintiffs sought Meta's production of data pertaining to the proposed

Class.[3] Gaa Decl., ¶ 12. On November 10, 2023, Plaintiffs and Meta discussed the production of additional data responsive to Plaintiffs' Subpoena. During this conference, Plaintiffs requested that Meta produce a representative sample of class-wide information reflecting all categories of data Meta received from Patreon's Pixel, directly or indirectly, including all event data and all other data or metadata, for all Class members. Gaa Decl., ¶ 12. Plaintiffs explained that data from Meta relating to the Class members will be central to Plaintiffs' showings under the predominance, typicality, and numerosity elements of Rule 23. *Id.* Despite this explanation, Meta did not agree to provide data concerning the Class. Gaa Decl., ¶ 12. While Meta supplemented its production on December 5, the supplemental production consists of [redacted] [redacted][4] Gaa Decl., Ex. 9. In this supplemental production, Meta did not provide [redacted] [redacted]. As a result, Meta's response to the Subpoena remains inadequate. *See* Gaa Decl., Ex. 10.

By this motion, therefore, Plaintiffs seek all categories of data Meta received directly or indirectly from Patreon's Pixel, including all event data, for all Class members. To reduce the burden of producing this information, Plaintiffs have proposed that Meta limit its production to responsive information dating from April 1 to July 31, 2022. The requested data fits within the scope of Plaintiffs' Subpoena and was discussed by Plaintiffs and Meta as early as April 27 and as recently as November 10. Gaa Decl. ¶¶ 5, 12; Exs. 3-5, 21-23. Nevertheless, even though the Court did not bifurcate merits and class discovery, Meta to date has refused to produce class-wide information in any capacity. Meta has neither explained nor substantiated the alleged burden of producing the requested representative sample of class-wide information. Gaa Decl., Ex. 11.

---

[3] Plaintiffs define the Class to include "[a]ll persons in the United States who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com." Gaa Decl., Ex. 13 at ¶ 74.

[4] Meta uses the term "event" to refer to user activities it tracks via Pixel, such as visiting a particular webpage, viewing content on a webpage, entering payment information, or searching for content on a website. The data corresponding to these tracked events is transmitted by the Pixel and known as "event data." Plaintiffs allege that video titles are transmitted to Meta through an event known as "microdata."

Plaintiffs' Subpoena also commands Meta to produce a witness pursuant to Rule 30(b)(6), and Plaintiffs proposed a list of deposition topics on October 16. Gaa Decl., Ex. 7. Plaintiffs and Meta conferred about these topics on October 31, at which time Meta stated that it would provide a counterproposal of consolidated topics. Gaa Decl., ¶ 11. On December 8, after Plaintiffs' repeated reminders, Meta proposed a drastically narrowed list of 30(b)(6) topics and failed to identify the witness(es) it intends to produce for the deposition or to offer deposition dates. *See* Gaa Decl., Exs. 11-12.

Meta also conditioned its counterproposal on a demand that Plaintiffs coordinate the deposition with plaintiffs in three separate actions, each against a different defendant. Gaa Decl., Exs. 8, 10-11. While Plaintiffs are open to any pragmatic proposal that would reduce Meta's burden of producing a witness, Meta has not suggested any feasible plan for coordination. Gaa Decl., Exs. 8, 10-11. The cases for which Meta seeks a coordinated deposition each involve separate defense counsel, and plaintiffs in one of those matters are represented by separate counsel.[5] Gaa Decl., Ex. 8. While all counsel would seek to be present for at least part of a coordinated deposition, the protective order and confidentiality concerns relevant to each case would require the majority of questioning to proceed separately. Gaa Decl., Ex. 17. The differing case schedules and deadlines in these actions present further logistical challenges. While some cases have developed an adequate documentary record to proceed with the deposition immediately, other cases trail. Gaa Decl., ¶ 30. And the more advanced cases have imminent deadlines that will not permit delay in taking the deposition: *Bloom* is already in the midst of class certification briefing, and *Stark*, *Jackson*, and *Heather* have different class certification deadlines and are in different stages of discovery. Gaa Decl., Exs. 18-20, 24. Moreover, there are a number of other

[5] Meta seeks a coordinated deposition in the following cases: *Stark, et al. v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.); *Heather v. Heathline Media, Inc.*, No. 3:22-cv-05059-JD (N.D. Cal.); *Jackson v. Fandom*, No. 4:22-cv-04423-JST (N.D. Cal.); and *Bloom v. Zuffa*, No. 2:22-cv-00412-RFB-BNW (D. Nev.). Plaintiffs' counsel in the action relevant to the Subpoena at issue here, *Stark, et al. v. Patreon, Inc.*, also serve as plaintiffs' counsel in the *Heather v. Heathline Media, Inc.* and *Jackson v. Fandom* matters. Plaintiffs in *Bloom v. Zuffa* are represented by separate counsel.

pending Pixel-related VPPA lawsuits that Meta has *not* proposed coordinating with *Stark*—an omission that would reduce the efficiency of a coordinated deposition at this stage. Gaa Decl., Exs. 8, 10-11.

Plaintiffs cannot afford further delay in obtaining the necessary information from Meta. After Plaintiffs responded to two motions to dismiss (*see* Ord. re Mot. to Dismiss, *Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131-JCS, Dkt. No. 40; Ord. re Mot. to Dismiss FAC, *Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131-JCS, Dkt. No. 59),[6] the Court entered a pretrial schedule (*see* Minute Ord., *Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131-JCS, Dkt. No. 65)[7] that makes Plaintiffs' motion for class certification due by March 15, 2024, underscoring Plaintiffs' need for an order enforcing the Subpoena as soon as the issue can be decided. Plaintiffs accordingly seek an order compelling Meta to comply with the Subpoena to ensure the parties receive the information essential to deciding the core issues in controversy, including the motion for class certification.

## III. LEGAL STANDARD

Rule 45 "provides that a subpoenaed party may be commanded to attend and testify at a deposition at a specified time and place and/or produce those records in its 'possession, custody, or control.'" *HID Glob. Corp. v. Vector Flow, Inc.*, No. 23-MC-80114-SVK, 2023 WL 4002722, at *1 (N.D. Cal. May 2, 2023) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). "The scope of discovery that can be requested under Rule 45 is the same as the scope under Rule 26(b)." *Id.*[8] "Rule 26(b) . . . . allows a party to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC-KAW, 2022 WL 620705, at *1 (N.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 26(b)); *In re Subpoena to Third Party Sentieon, Inc.*, No. 22-MC-80281-VKD, 2022 WL 17477092, at *1 (N.D. Cal. Dec. 6, 2022) (outlining scope of discovery under Rule 26).

---

[6] Gaa Decl., Exs. 14-15.

[7] Gaa Decl., Ex. 18.

[8] "The appropriate forum for a motion to enforce a third-party subpoena is in the district where compliance is required." *Erickson v. Builder Advisor Grp. LLC*, No. 22-MC-80094-TSH, 2022 WL 1265823, at *2 (N.D. Cal. Apr. 28, 2022). As this is Meta's home district, in which its compliance should be required, the motion is properly before the Court. *See HID Global*, 2023 WL 4002722, at *2.

"Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 14 Civ. 9372 (GBD)(HBP), 2018 WL 2215510, at *7 (S.D.N.Y. May 15, 2018) (citation omitted). Even highly confidential or sensitive information may be subpoenaed under this standard. *See In re Subpoena to Third Party Sentieon, Inc.*, No. 22-MC-80281-VKD, 2022 WL 17477092, at *2 (N.D. Cal. Dec. 6, 2022).

Additionally, prior to class certification, "[d]istrict courts have broad discretion to control the class certification process." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). It is an "unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Id*. Courts further recognize the need for pre-certification discovery relating to class issues. *Id*.

## IV. ARGUMENT

### A. Plaintiffs May Pursue Class Discovery Prior to Certification

"[T]he Ninth Circuit has held that a trial court abuses its discretion in refusing to permit class discovery where a plaintiff has either made a *prima facie* showing that the class action requirements of Rule 23 are satisfied, or has shown discovery is likely to substantiate the class allegations." *Gallegos v. Atria Mgmt. Co., LLC*, No. 5:16-cv-00888-JGB-SP, 2017 WL 11743705, at *3 (C.D. Cal. Jan. 31, 2017) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).[9] Plaintiffs here offer a *prima facie* showing that Rule 23(a)'s requirements will be met.

Numerosity is readily established as Patreon publicly states that it has more than 8 million monthly users. *See* https://www.patreon.com/about (last accessed Nov. 28, 2022). Further, Plaintiffs allege that all members of the Class were injured via the same snippet of code on Patreon's website (i.e.,

[9] Such a showing is not a prerequisite to class-related discovery, however. *See Gallegos*, 2017 WL 11743705, at *3 ("[T]he Ninth Circuit has not held trial courts lack discretion to permit class discovery unless such a showing has been made."); *see also Kaminske v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) (noting "there is nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it may very well be the case that courts routinely do not require such a showing").

the Meta Pixel) in a functionally identical way (i.e., the disclosure of their personal information without consent in violation of the VPPA). These allegations present overriding common questions regarding, among other issues, how the Meta Pixel works, what information it transmits, and whether Patreon users consented to this practice, the resolution of which applies to the VPPA claim of each Class member. The uniformity of the Pixel's operation and of the type of information it transmits also support Plaintiffs' typicality allegations that they and all Class members were injured by Patreon's violation of the VPPA in the same way. Additionally, the named Plaintiffs and their counsel are free of any conflict of interest with other Class members, and they have diligently prosecuted this matter, as evidenced, in part, by their efforts to secure this important information from Meta.

The information Plaintiffs seek from Meta bears directly on the class allegations. For instance, Plaintiffs expect that Meta's data will show whether and how many transmissions violate the VPPA, thus tending to prove or disprove numerosity. Plaintiffs, moreover, seek this information for the further purpose of showing that subscribers who watched a video on Patreon's website during the relevant time periods had their Facebook ID and the video title transmitted to Meta via the Pixel, thus demonstrating that the Pixel affects each Class member identically, supporting a finding of predominance under Rule 23(b)(3). Data relating only to the named Plaintiffs is insufficient for this analysis—as noted above, at least one defendant in a similar VPPA case has already argued that the absence of class-wide data from Meta defeats class certification. *See* Gaa Decl., Ex. 24; *Bloom*, Case No. 2:22-cv-00412-RFB-BNW, Dkt. No. 106. Patreon also is likely to rely on the subpoenaed data in the context of class certification, as the data bears equally on Patreon's ability to substantiate its arguments against certification.

Thus, the information sought by Plaintiffs' Subpoena will provide the record necessary for the Court to decide class certification.

**B. Plaintiffs' Subpoena Seeks Highly Relevant Information Exclusively Within Meta's Possession**

In addition to bearing on the Court's class certification analysis, the information sought by the Subpoena will prove or disprove key facts alleged by Plaintiffs. For example, Plaintiffs must prove that Patreon disclosed "information which identifies [Plaintiffs and Class members] as having requested or

obtained specific video materials" through the Pixel event data. 18 U.S.C. § 2710(a)(3). The VPPA restricts disclosure of "personally identifiable information," defined as information that "readily permit[s] an ordinary person to identify a [particular individual as having watched certain videos[.]" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (alterations in original); *see also Ghanaat v. Numerade Labs, Inc.*, No. 4:23-CV-00833-YGR, 2023 WL 5738391, at *5 (N.D. Cal. Aug. 28, 2023) (citing cases "finding allegations that defendant knowingly used the Pixel, provided FIDs and URLs to Meta sufficiently alleges a knowing disclosure."). Thus, in this context, Plaintiffs' claims require a showing that Patreon's website transmitted subscribers' FIDs and information revealing video titles. The representative sample of class information that Plaintiffs seek is therefore not only relevant but essential to determining whether Patreon is liable under the VPPA. It follows that Meta should be required to produce this data for the representative four-month period. *See In re Samsung Elecs. Co, Ltd.*, No. 22-MC-80005-VKD, 2022 WL 425579, at *2 (N.D. Cal. Feb. 11, 2022) (requiring nonparty to produce source code in response to subpoena); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19MD-02918-MMC-KAW, 2021 WL 4621755, at *3 (N.D. Cal. Oct. 5, 2021) (ordering production of sales data relevant to the plaintiffs' claims).

Moreover, this essential information is exclusively in Meta' possession. Patreon has informed Plaintiffs that it does not possess this data and that it is only obtainable from Meta. *See* Gaa Decl., ¶ 31. As such, the Pixel event data sought by the Subpoena is not cumulative or duplicative of any other discovery sought in the litigation, and it cannot be obtained from another source. *Cf. Gonzales v. Google, Inc.*, 234 F.R.D. 674, 80 (N.D. Cal. 2006) (noting limitations on discovery when it "is unreasonably cumulative or duplicative, or is obtainable from some source that is more convenient, less burdensome, or less expensive"). Further, for ten months running, Plaintiffs have diligently pursued the subpoenaed material, which, as demonstrated above, is highly relevant to Plaintiffs' claims and ability to maintain a class action.

It is also critical that Meta comply with Plaintiffs' Subpoena by designating a witness pursuant to Rule 30(b)(6). Plaintiffs have no visibility into Meta's data storage systems, and Meta has failed to adequately explain in meet-and-confer discussions how these systems work to collect, store, and query

data obtained through Pixel. Because these systems are uniquely and exclusively understood by Meta and its employees, Meta should be ordered to produce a witness to testify so that Plaintiffs can intelligently review the subpoenaed documents. Likewise, this testimony from Meta will provide a more complete picture of the process that occurs when the Pixel transmits users' personal information, answering key questions that both parties in the underlying action share an interest in discovering. By contrast, permitting Meta to evade giving testimony would deprive both parties and the Court of essential information going to Plaintiffs' core allegations.

Nor does Meta's latest proposal of December 8 moot the dispute as to the deposition. Although Meta has indicated a willingness to proceed with a deposition, it has not provided dates of availability and insists on coordinating an excessively narrow set of topics across four separate VPPA lawsuits. Plaintiffs cannot delay their case in favor of a vague or infeasible coordination notion. Even if producing a single witness to testify on topics common to multiple cases would be more convenient for Meta, that is not a basis to deny Plaintiffs discovery within the scope of their Subpoena that is obtainable only from Meta and proportional to the needs of the case. *See, e.g.*, *Pendleton Woolen Mills, Inc. v. Kraff's Men's Wear Co.*, No. 3:14-CV-628-PK, 2014 WL 7777762, at *9 (D. Or. Nov. 21, 2014) (rejecting argument that "the relevant information is available to [plaintiff] via more convenient, less burdensome means").

**C. Plaintiffs Have Reduced the Burden of Compliance.**

The order Plaintiffs request will not unduly burden Meta. "A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation." *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *13 (S.D. Cal. Nov. 29, 2022); *see also Negotiated Data Sols. LLC v. Dell, Inc.*, No. C09-80012MISC JF (HR, 2009 WL 733876, at *3 (N.D. Cal. Mar. 17, 2009) ("[r]eluctance to produce sensitive information" not a basis for withholding information). As discussed above, the data Plaintiffs seek is relevant and necessary for both class certification and deciding the merits of Plaintiffs' claims, and Plaintiffs have sought to alleviate any undue burden by substantially narrowing the scope of their requests. *See* Gaa Decl., Exs. 3-5. As discussed, Plaintiffs presently only seek a sample of class-wide data from April 1, 2022, to July 31, 2022—a significantly shorter period than the Class Period alleged in the operative

complaint.[10] This time period, determined through discovery Plaintiffs obtained from Patreon, will provide a usable, representative cross-section of relevant data. The proposed time period for production corresponds to when the Pixel was active on Patreon's site, encompasses dates when the named Plaintiffs watched videos on the site, and [REDACTED] [REDACTED].[11]

Meta has not met and cannot carry its heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. M07-cv-01819-CW (N.D. Cal. Mar. 1, 2010), Dkt. No. 967; *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed."). Although Meta has stated [REDACTED] [REDACTED], Plaintiffs have appropriately limited their Subpoena to the data transmitted by *Patreon's* Pixel for the discrete period identified above. Only Meta can furnish this data. *See HI.Q, Inc.*, 2022 WL 17345784, at *14 (granting motion to compel responses to subpoena where the documents were "uniquely within" the non-party's control).

Given Plaintiffs' March 15, 2024, deadline to move for class certification,[12] Plaintiffs have a pressing need for the data and documents at issue. Particularly under this circumstance, where Plaintiffs have diligently pursued this nonparty discovery, Meta's noncompliance warrants an order compelling its production. *See Schoonmaker v. City of Eureka*, No. 17-CV-06749-VC (RMI), 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018) (compelling nonparty that failed to comply with Rule 45 subpoena to "produce all responsive documents without objections").

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court enter an order compelling Meta to produce, (i) by January 5, 2024, all data and any related datasets, event data, metadata, and

---

[10] Plaintiffs allege a Class Period from April 1, 2016, to the present. Gaa Decl., Ex. 13 at ¶ 75.

[11] Plaintiffs reserve all rights to seek additional class-wide information from Meta.

[12] Gaa Decl., Ex. 18.

documents containing, showing, or summarizing the transmissions that Patreon's Pixel caused to be sent to Meta from April 1, 2022, to July 31, 2022, and (ii) by February 2, 2024, a witness pursuant to Rule 30(b)(6) to testify in a deposition concerning the topics set forth above.

Dated: December 13, 2023

Respectfully submitted,

*/s/ Reid Gaa*

Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also caused a copy of the under-seal documents to be served *via electronic* and *First-Class Mail* on the following:

Laurie Edelstein
John L. Flynn
Jonathan Alexander Langlinais
Paige E. Zielinski
Hayley L. MacMillen
**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105-2453
Telephone: (415) 293-5943
Email: ledelstein@jenner.com
Email: JFlynn@jenner.com
Email: JALanglinais@jenner.com
Email: PZielinski@jenner.com
Email: HMacMillen@jenner.com

*Counsel for Meta Platforms, Inc.*

Fred Norton
Nathan Walker
Bree Hann
Gil Walton
**THE NORTON LAW FIRM PC**
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900
Email: fnorton@nortonlaw.com
Email: nwalker@nortonlaw.com
Email: bhann@nortonlaw.com
Email: gwalton@nortonlaw.com

*Counsel for Patreon, Inc.*

*/s/ Reid Gaa*
Reid Gaa