Laurie Edelstein (Bar No. 164466)
Paige Zielinski (Bar. No. 318639)
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone: (628) 267-6800
ledelstein@jenner.com
pzielinski@jenner.com

*Attorney for Non-Party Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAYDEN STARK, et al., | Case No. 23-mc-80326-JCS |
| Movants, | |
| v. | **NON-PARTY META PLATFORMS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |
| META PLATFORMS, INC., | |
| Respondent. | The Honorable Joseph C. Spero |

**(REDACTED VERSION)**

**FILED UNDER SEAL**

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    Plaintiffs' Putative Class Action Complaint and Allegations Against Patreon ............................................................................................................... 2

    B.    Plaintiffs' Subpoenas to Meta ................................................................... 4

    C.    Plaintiffs' Demand for Production of Putative Classwide Data ............................ 5

    D.    Plaintiffs' Demand for Deposition Testimony........................................................ 6

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    PLAINTIFFS' MOTION TO COMPEL DEPOSITION TESTIMONY IS MOOT........................................................................................................................ 8

II.    PLAINTIFFS OFFER NO BASIS FOR COMPELLING PRODUCTION OF PUTATIVE CLASSWIDE DATA FROM A NON-PARTY........................................... 11

    A.    Plaintiffs Fail to Show that Putative Classwide Discovery From a Non-Party is Warranted............................................................................................... 11

    B.    Plaintiffs' Demand for Putative Classwide Discovery is Not Proportional to the Needs of the Case.................................................................... 12

    C.    Plaintiffs' Demand for Putative Classwide Data is Unduly Burdensome ............................................................................................................. 14

    D.    Plaintiffs' Demand for Putative Classwide Data is Incompatible with the VPPA ...................................................................................................... 15

CONCLUSION ................................................................................................. 17

**TABLE OF AUTHORITIES**

Page

**Cases**

*Already, LLC* v. *Nike, Inc.*, 568 U.S. 85 (2013)................................................................ 8

*Amazon.com LLC* v. *Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) ....................................... 16

*Brach* v. *Newsom*, 38 F.4th 6 (9th Cir. 2022) .......................................................................... 8

*Cnty. of Santa Clara* v. *Astra USA, Inc.*, No. 05 Civ. 3740, 2009 WL 3613388 (N.D. Cal. Oct. 28, 2009) .............................................................................................................................. 10

*Dart* v. *Indus. Co., Inc.* v. *Westwood Chem. Co., Inc.*, 649 F.2d 646 (9th Cir. 1980)................. 8

*Ellsworth* v. *U.S. Bank, N.A.*, 30 F. Supp. 3d 886 (N.D. Cal. 2014) ......................................... 8

*Eichenberger* v. *ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ....................................................... 3

*Fed. Trade Comm'n* v. *DIRECTV, Inc.*, No. 15 Civ. 1129, 2015 WL 8302932 (N.D. Cal. Dec. 9, 2015) ......................................................................................................................................... 8

*In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, No. 19 MD 02918, 2021 WL 4621755 (N.D. Cal. Oct. 5, 2021) ..................................................................................... 14

*In re Samsung Electronics Co, Ltd.*, No. 22 Misc. 80005, 2022 WL 425579 (N.D. Cal. Feb. 11, 2022) ....................................................................................................................................... 14

*In re Subpoena on Sorrento Therapeutics, Inc.*, No. 17 Civ. 2442, 2018 WL 788899 (S.D. Cal. Feb. 8, 2018) ....................................................................................................................... 10

*Nidec Corp.* v. *Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007)....................................... 11

*Pitts* v. *Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ...................................................... 8

*Sanchez* v. *City of San Jose*, No. 06 Civ. 6331, 2008 WL 3266638 (N.D. Cal. Aug. 7, 2008).... 10

*Stark* v. *Patreon, Inc.*, No. 22 Civ. 3131 (N.D. Cal.) ............................................................ 2, 3

*Suufi* v. *MediaLab.Ai, Inc.*, No. 22 Misc. 80205, 2022 WL 21815809 (Sept. 20, 2022) ............. 11

*Updatee Inc.* v. *Axel Springer SE*, No. 17 Civ. 5054, 2018 WL 5734670 (N.D. Cal. Oct. 31, 2018) ............................................................................................................................. 8, 12, 14

**Statutes**

18 U.S.C. § 2710 ......................................................................................................................... 1

18 U.S.C. § 2710(a)(3)................................................................................................................. 3

18 U.S.C. § 2710(a)(4)................................................................................................................. 16

18 U.S.C. § 2710(b)(1) ................................................................................................................. 2

**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105

18 U.S.C. § 2710(b)(2)(D)(ii) ...................................................................................................... 15

18 U.S.C. § 2710(b)(2)(F) ........................................................................................................... 16

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................... 8, 11, 14

Fed. R. Civ. P. 26(b)(2)(C)(iii) .................................................................................................. 14

Fed. R. Civ. P. 26(b)(2)(C)(i) ............................................................................................... 8, 11

Fed. R. Civ. P. 45 ......................................................................................................................... 7

Fed. R. Civ. P. 45(d)(1) ......................................................................................................... 7, 11

Fed. R. Civ. P. 45(d)(3)(A)(iv) .................................................................................................... 7

**JENNER & BLOCK LLP**
**455 Market Street, Suite 2100**
**San Francisco, CA 94105**

**INTRODUCTION**

Meta Platforms, Inc. ("Meta") is not a party to this dispute.  Nonetheless, Plaintiffs and Defendant Patreon, Inc. ("Patreon") have served five separate subpoenas on Meta and WhatsApp, Inc., a company that Meta owns and operates.  Meta has made every effort to cooperate.  It has made multiple productions of data and information to Plaintiffs and Patreon.  Meta also has agreed to a deposition on January 25, 2024, which is within the timeframe Plaintiffs have requested.  But Plaintiffs still are not satisfied and have filed this motion to compel.  Plaintiffs seek to compel Meta to produce a witness for a deposition by February 2, 2024, which Meta already has agreed to do.  They also are demanding that Meta produce voluminous putative classwide data over a 90-period that may include confidential information of potentially millions of Patreon users whom Plaintiffs do not yet represent, even though Plaintiffs claim Patreon violated those users' privacy rights by disclosing the data to Meta.  Plaintiffs' discovery demands on a non-party have become excessive and unduly burdensome.

Plaintiffs filed this putative class action against Patreon, alleging *Patreon*, not Meta, violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, through its use of the Meta Pixel.  The Pixel is a publicly available snippet of computer code businesses can use to track activity on their websites to optimize their services, marketing, and advertisements.  It is undisputed that Patreon installed the Pixel code on its website and configured it.   Plaintiffs claim Patreon knowingly disclosed information to Meta about videos that users of Patreon's website requested or obtained without user consent through Patreon's use of the Pixel.  Plaintiffs do not allege that Meta has any liability or violated any applicable law.

Plaintiffs and Patreon continue to litigate threshold constitutional issues, with a hearing on Patreon's challenge to the constitutionality of the VPPA set for March 8, 2024.  No class has been certified in the underlying case; indeed, no motion for class certification has yet been filed.

The Court should deny Plaintiffs' motion to compel for several reasons.  *First*, Plaintiffs' motion to compel production of a deposition witness is moot.  Well before Plaintiffs even filed this motion to compel, Meta agreed to produce a witness for deposition, and Meta has proposed a deposition date of January 25, 2024, well within the timeframe Plaintiffs seek.  Before Plaintiffs

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

filed their motion to compel, Meta also proposed deposition topics that cover the information Plaintiffs want, including any relevant issues to class certification. In addition, even after Plaintiffs filed this motion, Meta has continued to negotiate in good faith with Plaintiffs to moot this issue. However, Plaintiffs refuse to proceed with the deposition unless Meta provides assurances that it will produce its witness for another deposition if the Court orders the production of classwide data. Plaintiffs' demand is unreasonable. *Second,* Plaintiffs fail to offer information about relevant discovery they have pursued from Patreon and therefore cannot show that further discovery from a non-party is warranted. *Third*, Plaintiffs' demand for classwide discovery is not proportional to the needs of the case because Plaintiffs can address any genuine class certification issues through other means, including through a deposition of Meta's witness. *Fourth*, production of classwide data would be unduly burdensome given Meta's status as a non-party and granting the motion could expose Meta to heavy discovery burdens in many other pending VPPA cases. *Fifth*, Plaintiffs' demand for classwide data is incompatible with the VPPA's requirements and would subvert Congress's efforts to limit the discovery of private individuals' protected information through civil litigation.

There are limits on discovery from non-parties for a reason. It is inequitable to impose undue burdens on an entity that does not have a stake in the litigation. Non-party Meta has been more than reasonable in responding to Plaintiffs' increasing and excessive discovery demands. Plaintiffs are not entitled to any more discovery from Meta. Plaintiffs' motion should be denied.

## BACKGROUND

### A.    Plaintiffs' Putative Class Action Complaint and Allegations Against Patreon

Plaintiffs filed their putative class action complaint against Patreon on May 27, 2022, alleging violations of the VPPA and California law. *See Stark* v. *Patreon, Inc.*, No. 22 Civ. 3131 (N.D. Cal.), ECF No. 1. The VPPA generally prohibits the knowing disclosure by a "video tape service provider" of "personally identifiable information concerning any consumer of such provider" without consent. 18 U.S.C. § 2710(b)(1). The VPPA defines "personally identifiable information" as information "which identifies a person as having requested or obtained specific

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has held that the term "personally identifiable information" includes only information that "readily permits an ordinary person to identify a particular individual as having watched certain videos*." Eichenberger* v. *ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

Plaintiffs allege that Patreon collects and shares without consent its users' personally identifiable information ("PII") through its use of the Meta Pixel. *See Stark* v. *Patreon*, ECF No. 41 ¶¶ 3-6, 46-58 ("FAC"). According to Plaintiffs, Patreon installed the Pixel installed on its website and configured it to collect and share "the user's unique Facebook ID . . . and the titles of prerecorded videos that Patreon delivered to the user for viewing." FAC ¶ 4. Plaintiffs allege that "equipped with a [Facebook ID] and the video content name and URL—all of which Patreon knowingly provides to Meta without appropriate consent from its subscribers—any ordinary person could determine the identity of the Patreon subscriber and the specific video or media content they viewed on Patreon's website." FAC ¶ 50.

Meta is not a defendant in the case, and Plaintiffs do not allege that Meta violated the VPPA, California law, or any other applicable law.

Plaintiffs filed suit on behalf of themselves and a proposed class of "[a]ll persons in the United States who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com." FAC ¶ 74.[1] Plaintiffs have not yet moved for class certification, and their motion is currently due March 15, 2024. Pls.' Motion to Compel ("Motion") at 6.

Patreon's motion for summary judgment challenging the constitutionality of the VPPA remains pending, with a hearing set for March 15, 2024. *See Stark* v. *Patreon*, ECF No. 92.

---

[1] Plaintiffs' proposed nationwide class includes a proposed subclass of "[a]ll persons in California who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com." FAC ¶ 74.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

**B.    Plaintiffs' Subpoenas to Meta**

On February 1, 2023, Plaintiffs served a broad subpoena on Meta seeking production of documents and deposition testimony.  Declaration of L. Edelstein ("Edelstein Decl.") ¶ 3; *see also* Declaration of R. Gaa ("Gaa Decl."), Ex. 1, ECF No. 1-2.[2]  Meta timely filed responses and objections to the subpoena on February 15, 2023.  Edelstein Decl. ¶ 4; *see also* Gaa Decl., Ex. 2, ECF No. 1-3.  Plaintiffs and Meta met and conferred several times over the next several months to negotiate a reasonable production to resolve the subpoena.  Edelstein Decl. ¶ 4; *see also* Gaa Decl., Exs. 3-7, ECF Nos. 1-4.  On August 8, 2023, Meta and Plaintiffs expressly agreed that as an initial production, ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████  Edelstein Decl. ¶ 5, Ex. 1.

Meta produced that data on September 22, 2023.  Edelstein Decl. ¶ 6, Ex. 2; *see also* Gaa Decl., Ex. 6, ECF No. 1-4.  Following Meta's production, Plaintiffs raised several alleged issues concerning Meta's production and claimed the production was incomplete.  Gaa Decl., Ex. 7, ECF No. 1-4.  On October 16, 2023, Plaintiffs requested for the first time ████████████████ ████████████████████████████████.  *Id.*; *see also* Edelstein Decl. ¶ 7.  On October 27, 2023, Meta agreed to produce ████████████████████████████████████ ████████████████████████████████"  Edelstein Decl. ¶ 8, Ex. 3.  Meta also explained in detail that Plaintiffs were mistaken about the purported deficiencies in Meta's production and that Plaintiffs' assertions were based on a fundamental misunderstanding of the data.  *Id.*  Plaintiffs never responded to Meta's explanations about Plaintiffs' misapprehensions concerning the data.  Edelstein Decl. ¶ 8.

On December 5, 2023, Meta produced ████████████████████████  Plaintiffs requested.  Gaa Decl., Ex. 9, ECF No. 1-6; Edelstein Decl. ¶ 9.  Plaintiffs were not satisfied with that production either.  On December 6, 2023, Plaintiffs wrote to reiterate their view that Meta's

---

[2] Mr. Gaa's Declaration is ECF No. 1-1.  For those exhibits to which we cite that are filed under seal, we cite to the ECF No. associated with the redacted version.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

production was inadequate because ███████████████████████████████████

██████████████████████████████████ Gaa Decl., Ex. 10, ECF No. 1-

6.  Plaintiffs offered no factual basis for these assertions.   Meta responded on December 8, 2023

that it had produced exactly what Plaintiffs has requested – ████████████████ Gaa

Decl., Ex. 11, ECF No. 1-6.  Plaintiffs responded by filing this motion to compel seeking classwide

data.

   **C.     Plaintiffs' Demand for Production of Putative Classwide Data**

   On September 22, 2023, pursuant to Meta's agreement with Plaintiffs, Meta produced ███

████████████████████████████████████████████████████████████

███ .  Gaa Decl., Ex. 6, ECF No. 1-4; Edelstein Decl. ¶ 6, Ex. 2.  Plaintiffs had agreed to this

initial production while reserving the right to resume its other requests at a later date.  Gaa Decl.,

Ex. 5, ECF 1-4.  Plaintiffs never mentioned any request for classwide data again until December

6, 2023.  Edelstein Decl. ¶ 11.

   On December 6, 2023, Plaintiffs gave Meta 48 hours to agree to produce classwide data

and demanded that Meta complete its production of that data within 9 days.  Gaa Decl., Ex. 10,

ECF No. 1-6; Edelstein Decl. ¶ 11.  Plaintiffs threatened to file a motion to compel on December

11, 2023 if Meta did not agree to these demands.  Gaa Decl., Ex. 10, ECF No. 1-6; Edelstein Decl.

¶ 11.

   Meta informed Plaintiffs on December 8, 2023 that these demands were unreasonable and

Meta would need additional time to consider Plaintiffs' request.  Gaa Decl., Ex. 11, ECF No. 1-6;

Edelstein Decl. ¶ 12.

   Plaintiffs asserted on December 12, 2023 that they had requested classwide data during a

meet-and-confer on November 10, 2023.  Edelstein Decl. ¶ 13, Ex. 4.  But this statement was

inaccurate.  Plaintiffs confused this case, *Stark* v. *Patreon*, with two other VPPA cases in which

they represent the plaintiffs, *Heather* v. *Healthline, Inc.*, No. 22 Civ. 5059 (N.D. Cal.), and *Jackson*

v. *Fandom, Inc.*, No. 22 Civ. 4423 (N.D. Cal.).  The November 10, 2023 meet and confer and

Plaintiffs' request for classwide data related to the *Healthline* and *Fandom* cases, not *Stark* v.

*Patreon*.  Edelstein Decl. ¶ 14.  Indeed, Plaintiffs' counsel stated that they were taking a different

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1  approach in the *Healthline* and *Fandom* cases than in the *Patreon* case, requesting classwide data

2  ███████████████████████████████████████.  Plaintiffs filed their motion to compel on

3  December 13, 2023.  *Id.*

4      **D.    Plaintiffs' Demand for Deposition Testimony**

5          Plaintiffs' motion to compel demands that Meta produce a witness to testify in a deposition

6  by February 2, 2024.  Motion at 2.  Plaintiffs sent Meta proposed deposition topics on October 16,

7  2023.  *Id.* at 5; Edelstein Decl. ¶ 15; Gaa Decl., Ex. 7, ECF No. 1-4.  On October 31, 2023, during

8  a meet and confer about the topics, Meta agreed to produce a deposition witness and informed

9  Plaintiffs it would send a revised list of proposed deposition topics.  Edelstein Decl. ¶ 16; Gaa

10 Decl., Ex. 11, ECF No. 1-6.  Meta also raised the possibility of consolidating the deposition across

11 several VPPA Pixel cases.  Meta explained it was actively negotiating a deposition subpoena in

12 another VPPA Pixel case, *Bloom* v. *Zuffa*, No. 22 Civ. 412 (D. Nev.), involving virtually identical

13 issues.  In addition, *Plaintiffs' counsel in this case* had served deposition subpoenas on Meta in

14 two other VPPA Pixel matters – the *Healthline* and *Fandom* cases.  Meta stated that it preferred to

15 have its witness sit for a single, consolidated deposition to avoid wasting resources and the

16 witness's time on redundant lines of questioning.  Edelstein Decl. ¶ 17; Gaa Decl., Ex. 11, ECF

17 No. 1-6.  Plaintiffs' counsel indicated they were open to a consolidated deposition, and Meta began

18 working actively to coordinate the depositions.  Edelstein Decl. ¶ 17.

19         On November 29, 2023, Meta put Plaintiffs' counsel in touch with Plaintiffs' counsel in

20 *Bloom* v. *Zuffa*.  *See* Gaa Decl., Ex. 8, ECF No. 1-5.  Meta did not receive a response to its

21 November 29, 2023 email until after Plaintiffs filed this motion to compel.  Edelstein Decl. ¶ 18.

22         On December 6, 2023, Plaintiffs sent Meta an email saying that "we appreciate that you

23 have agreed to produce a witness, but we cannot accept any further delay given that our class

24 certification motion is due in March."  Gaa Decl., Ex. 10, ECF No. 1-6.  On December 8, 2023,

25 Meta reiterated its agreement to produce a deposition witness and sent proposed deposition topics

26 to Plaintiffs.  Gaa Decl., Exs. 11-12, ECF Nos. 1-6, 1-7; Edelstein Decl. ¶ 18.  These proposed

27 deposition topics include topics potentially relevant to Plaintiffs' class certification motion,

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1    including the types of event data that Meta receives through the Meta Pixel ███████████

2    ███████████.  Gaa Decl., Ex. 12, ECF No. 1-7.

3         Plaintiffs did not object to Meta's proposed deposition topics.  Edelstein Decl. ¶ 21.

4    Instead, on December 13, 2023, Plaintiffs filed this motion to compel seeking a deposition by

5    February 2, 2024.  Even after Plaintiffs filed their motion, Meta continued to work with Plaintiffs

6    in good faith in an effort to moot this dispute.  For example, on December 15, 2023, Meta served

7    a proposed protocol for a consolidated deposition and offered to make its witness available for

8    deposition on January 25, 2024.  Edelstein Decl. ¶ 20, Ex. 5.  On December 19, 2023, however,

9    Plaintiffs objected for the first time to moving forward with the consolidated deposition, stating it

10   was premature because they wanted a ruling on their request for classwide data before a

11   deposition.  Edelstein Decl. ¶ 22, Ex. 6.

12        Plaintiffs then reconsidered and said they were willing to consider a consolidated

13   deposition on January 24 or January 25, 2024 and were available both days, but they wanted the

14   right to re-depose Meta's witness if the Court were to order the production of classwide

15   data.  Edelstein Decl. ¶ 23.  Meta informed Plaintiffs that it did not believe that Plaintiffs would

16   have a right to re-depose Meta, particularly given that the deposition topics would provide

17   plaintiffs with a sufficient opportunity to explore topics concerning classwide data and Meta's

18   status a non-party.  Edelstein Decl. ¶ 24, Ex. 7.  Nevertheless, Meta agreed to meet and confer with

19   Plaintiffs on that issue if needed.  *Id*.

20        Plaintiffs have refused to participate in the January 25, 2024 deposition on these

21   terms.  Edelstein Decl. ¶¶ 25-26, Exs. 8-9.

22                                    **LEGAL STANDARD**

23        Federal Rule of Civil Procedure 45 governs discovery from non-parties via subpoena.  *See*

24   Fed. R. Civ. P. 45.  A party issuing a subpoena "must take reasonable steps to avoid imposing

25   undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  The

26   Court may quash or modify a subpoena that subjects a non-party to undue burden.  Fed. R. Civ. P.

27   45(d)(3)(A)(iv).  To determine whether a subpoena should be enforced, the Court is guided by

28   Rule 45 and Rule 26, which provides that the Court must limit discovery if (among other things)

"the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court must also limit the discovery sought if it is not "proportional to the needs of the case," taking into account "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Although the scope of permissible discovery pursued from a party opponent is broad, "permissible discovery from nonparties is narrower than that permitted from parties to the action." *Fed. Trade Comm'n* v. *DIRECTV, Inc.*, No. 15 Civ. 1129, 2015 WL 8302932, at \*4 (N.D. Cal. Dec. 9, 2015); *see also Dart* v. *Indus. Co., Inc.* v. *Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). Non-parties "may occasionally have to testify and give evidence for and against litigants, but non-parties should not be burdened in discovery to the same extent as the litigants themselves. Requests to non-parties should be narrowly drawn to meet specific needs for information." *Updateme Inc.* v. *Axel Springer SE*, No. 17 Civ. 5054, 2018 WL 5734670, at \*3 (N.D. Cal. Oct. 31, 2018) (internal quotation marks omitted) (collecting cases).

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy* v. *Hunt*, 455 U. S. 478, 481 (1982) (per curiam)); *see also Ellsworth* v. *U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 906 (N.D. Cal. 2014). When "events subsequent to the filing of the case resolve the parties' dispute," a court "must dismiss the case as moot." *Pitts* v. *Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011); *see also Brach* v. *Newsom*, 38 F.4th 6, 11 (9th Cir. 2022).

## ARGUMENT

## I.    PLAINTIFFS' MOTION TO COMPEL DEPOSITION TESTIMONY IS MOOT

Meta agreed in October 2023, six weeks before Plaintiffs filed their motion, to produce a witness for deposition, and Meta has proposed a deposition on January 25, 2024, well within the February 2, 2024 timeframe Plaintiffs have requested in their motion to compel. Gaa Decl., Ex. 11, ECF No. 1-6; Edelstein Decl. ¶¶ 16, 20, Ex. 5; Motion at 2. Meta also has proposed a

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

reasonable set of deposition topics that closely track the topics Plaintiffs have requested in their motion. Gaa Decl., Ex. 12, ECF No. 1-7; Edelstein Decl. ¶ 19; Motion at 2. Plaintiffs' counsel is available, and they have never objected to any of Meta's proposed deposition topics. Edelstein Decl. ¶¶ 21, 23. Meta continued to negotiate in good faith with Plaintiffs even after they filed their motion to see if the deposition could be worked out. But Plaintiffs simply walked away when Meta did not give in to their last-minute demand for classwide data. *See* Edelstein Decl. ¶¶ 22-25. Having refused to participate in a deposition that is within the timeframe they requested, Plaintiffs cannot seek relief from this Court. There is no basis to compel Meta to produce a deposition witness. On that basis alone, the Court should deny their motion to compel deposition testimony as moot.

Plaintiffs complain that Meta "conditioned its counterproposal" for a deposition "on a demand that Plaintiffs coordinate the deposition with Plaintiffs in three separate actions." Motion at 5. This assertion mischaracterizes the parties' negotiations in two ways. *First*, Meta proposed a consolidated deposition for four cases to avoid wasting resources and its witness's time on redundant lines of questioning. Edelstein Decl. ¶ 17; *see also* Gaa Decl. Ex. 11, ECF No. 1-6. Plaintiffs' counsel represent the plaintiffs in *three* of those cases—*Patreon*, *Healthline*, and *Fandom*. Meta's proposal for a consolidated deposition was an opportunity for Meta and Plaintiffs' counsel to conserve resources exploring issues common to all three of Plaintiffs' counsel's cases. *Second*, Meta did not "demand" that Plaintiffs agree to coordinate the deposition. Although Meta would have preferred to schedule a consolidated deposition for obvious reasons, Meta never refused to produce a witness otherwise. When Plaintiffs filed their motion, there was no dispute about whether Meta would produce a witness.

There also was no meaningful dispute about the scope of that deposition. Plaintiffs assert Meta proposed "a drastically narrowed" set of topics. Motion at 5. But even a cursory comparison of Plaintiffs' and Meta's proposed topics belies that claim. *Compare* Gaa Decl., Ex. 12, ECF No. 1-7 *with* Motion at 2. Meta proposed topics that cover the subjects Plaintiffs have proposed, and these topics would allow Plaintiffs to address the class certification issues they have identified. In fact, Plaintiffs never objected to Meta's proposed topics and have not proposed any changes to

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1  those topics since Meta sent them on December 8, 2023.  Edelstein Decl. ¶ 21.  Meta also sent

2  Plaintiffs a reasonable deposition protocol that would allow multiple parties to question Meta's

3  witness on general and case-specific topics.  Edelstein Decl. ¶ 20, Ex. 5.

4          Plaintiffs have no deposition on the calendar because they backed out, refusing to

5  participate unless Meta agreed in advance to a *second* deposition if the Court were to order the

6  production of classwide data.  Edelstein Decl. ¶¶ 22-25, Exs. 6-8.  Meta did not agree to Plaintiffs'

7  unreasonable demand, Edelstein Decl. ¶ 26, Ex. 9, for several reasons.  First, even though Meta

8  has attempted to accommodate Plaintiffs' requests for discovery, Plaintiffs seem to have forgotten

9  that Meta is not a party to this litigation, and there are limits to discovery from a non-

10  party.  Second, it makes little sense for Meta, a non-party, to agree to a second deposition before

11  the first deposition has even taken place and before there is an opportunity to negotiate topics or

12  scheduling.  Third, it would be unduly burdensome for Meta's witness to sit for multiple

13  depositions without some demonstrated need, and it is unclear at this point what that need could

14  be as Meta's proposed deposition would have allowed Plaintiffs to cover issues relevant to class

15  certification.  Nevertheless, in a continued and reasonable effort to resolve this issue, Meta agreed

16  to meet and confer with Plaintiffs to discuss whether another deposition should proceed if the

17  Court were to order production of classwide data.   Edelstein Decl. ¶ 24, Ex. 7.

18          Plaintiffs refused that offer and have refused to depose Meta's witness because they want

19  a second bite of the apple if they prevail on their belated demand for classwide data.  Plaintiffs'

20  attempt to condition the deposition on their last-minute demand for classwide data does not create

21  a meaningful dispute for this Court to resolve.  Courts routinely deny motions to compel deposition

22  testimony when the party receiving the subpoena agrees to produce a witness for deposition, even

23  if the parties continue to negotiate the details of scheduling.  *See, e.g.*, *In re Subpoena on Sorrento*

24  *Therapeutics, Inc.*, No. 17 Civ. 2442, 2018 WL 788899, at *6 (S.D. Cal. Feb. 8, 2018); *Cnty. of*

25  *Santa Clara* v. *Astra USA, Inc.*, No. 05 Civ. 3740, 2009 WL 3613388, at *1 (N.D. Cal. Oct. 28,

26  2009); *Sanchez* v. *City of San Jose*, No. 06 Civ. 6331, 2008 WL 3266638, at *2 (N.D. Cal. Aug.

27  7, 2008).

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

Meta—a non-party—has made more than reasonable efforts to accommodate Plaintiffs' demands. Plaintiffs' motion to compel is moot and should be denied.[3]

## II. PLAINTIFFS OFFER NO BASIS FOR COMPELLING PRODUCTION OF PUTATIVE CLASSWIDE DATA FROM A NON-PARTY

### A. Plaintiffs Fail to Show that Putative Classwide Discovery From a Non-Party is Warranted

Plaintiffs say virtually nothing in their motion about what discovery they have sought or obtained from Patreon, including any discovery relevant to class certification issues. Meta is not a party to the underlying VPPA case, and it is well established that a party must first pursue discovery vigorously from its party opponent before pursuing discovery from a non-party like Meta. *See, e.g.*, *Suufi* v. *MediaLab.AI, Inc.*, No. 22 Misc. 80205, 2022 WL 21815809, at *1-2 (Sept. 20, 2022); *Nidec Corp.* v. *Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); Fed. R. Civ. P. 26(b)(2)(C)(i). The Court cannot determine whether Plaintiffs' demand for non-party discovery is warranted without this information. The bare representation that Patreon lacks the specific classwide Pixel event data Plaintiffs seek, Motion at 9, is not enough to evaluate whether Plaintiffs' demand is within the scope of permissible discovery, including whether it is proportional to the actual needs of their case and whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 26(b)(1). The Court should deny Plaintiffs' motion on that basis alone.

---

[3] Meta has expended significant resources negotiating a deposition with Plaintiffs, pursuing a consolidated deposition across VPPA Pixel cases, and responding to this motion. Meta proposed a consolidated deposition to reduce the burden on Meta, a non-party, and its witness who would otherwise be required to testify about the same topics in multiple depositions, including in two other cases in which *Plaintiffs' counsel in this case* have served deposition subpoenas. Recognizing that a consolidated deposition created efficiencies for Plaintiffs' counsel, as well as Meta, Plaintiffs expressed interest in pursuing a consolidated deposition. They then scuttled the plan and backed out of the deposition entirely because of their belated demand for classwide data. Meta submits that this conduct amounts to gamesmanship. At best, Plaintiffs have failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It therefore would be appropriate for the Court to quash Plaintiffs' subpoena for deposition testimony entirely. Given the lengths Meta has gone to accommodate Plaintiffs' counsel in their various cases, Meta should not be required to produce a deposition witness in any VPPA Pixel case in which Plaintiffs' counsel represents the plaintiffs.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

---

NON-PARTY META'S OPP. TO MOTION TO COMPEL                     CASE NO. 23-MC-80326-JCS

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

**B.      Plaintiffs' Demand for Putative Classwide Discovery is Not Proportional to the Needs of the Case**

Plaintiffs demand for voluminous data about other Patreon users' online activities is not proportional to the needs of the case or "narrowly drawn to meet specific needs for information" as required for discovery from non-parties.  *Axel Springer SE*, 2018 WL 5734670, at *3.

As an initial matter, Plaintiffs suggest they are entitled to the putative classwide data they seek from Meta so long as they make a *prima facie* showing that the Rule 23 factors are satisfied.  Motion at 7.  Plaintiffs are mistaken, and they rely on case law addressing whether a district court abuses its discretion when it denies class certification before allowing a plaintiff to pursue any class discovery at all.  *Id.*  The issue here is not whether Plaintiffs are entitled to seek *some* class discovery in their dispute with Patreon but whether Plaintiffs' specific demand for putative classwide data from a non-party is warranted.  There is no automatic right to demand discovery on class certification issues that exceeds the limits Rules 26 and 45 impose, particularly from a non-party like Meta.

Plaintiffs also are insisting that Meta produce classwide data, but they offer no evidence they have viable VPPA claims typical of the class or that they can adequately represent the class.  More than three months ago, Meta produced ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████.  Gaa Decl., Ex. 6, ECF No. 1-4; Edelstein Decl., Ex. 2; Motion at 1, 3.  Although Plaintiffs have had ample opportunity to review this data, they make no representations to the Court ████████████████████████████████████████ ████.  Indeed, they are silent ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████.

Plaintiffs tick through the Rule 23(a) factors, claiming they offer a *prima facie* showing satisfying Rule 23(a)'s requirements and are entitled to class discovery.  Motion at 7-8.  With respect to typicality, Plaintiffs say their allegations about the "uniformity of the Pixel's operation and of the type of information it transmits also support Plaintiffs' typicality allegations that they and all Class members were injured by Patreon's violation of the VPPA in the same way."  Motion

1  at 8. And when it comes to their adequacy to represent the proposed class, Plaintiffs say only that

2  they and their counsel have no conflicts of interest and "have diligently prosecuted this

3  matter." *Id.* These statements raise questions as to whether Plaintiffs have a genuine need for

4  classwide data, or whether Plaintiffs' counsel are simply fishing for new class representatives

5  because ███████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ██████. Given that Plaintiffs may not have a valid interest in other individuals' data, Meta should

8  not be required to produce classwide data.

9          More fundamentally, Plaintiffs fail to show that their demand for putative classwide data

10  is proportional to the needs of their case and the likely benefits of receiving classwide data at this

11  stage of their litigation outweigh the burdens of requiring a non-party to produce that

12  data. Plaintiffs argue they need classwide data for their motion for class certification because such

13  data will help them show "whether and how many transmissions violate the VPPA" to establish

14  numerosity and "that the Pixel affects each Class member identically" to show typicality. Motion

15  at 8. But Plaintiffs never explain why they need Pixel event data associated with absent class

16  members given the information they already have.

17          Plaintiffs make the very narrow representation that Patreon does not have *Pixel event data*,

18  but Plaintiffs share almost nothing about what other discovery they have sought or obtained from

19  Patreon, their party opponent. That includes any discovery that might be relevant to numerosity

20  or typicality, such as information about what events Patreon configured the Pixel to transmit, the

21  identities of Patreon subscribers during the relevant time period, whether Patreon configured the

22  Pixel to operate uniformly for all visitors to Patreon.com, the amount of video content on

23  Patreon.com, or whether Patreon maintains information about the viewing histories of its

24  subscribers. Plaintiffs also share nothing about what relevant evidence they may have gathered

25  from their own investigations, such as their efforts to identify and interview putative class members

26  or Plaintiffs' own analysis of how the publicly available Pixel code on Patreon's website

27  functions. In addition, Meta already has produced ██████████████████ *see* Edelstein Decl.,

28  Ex. 2, and agreed to produce a deposition witness to answer questions about this production, as

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

well as topics relevant to class certification. *See* Gaa Decl., Ex. 12, ECF No. 1-7. Plaintiffs offer no arguments why the combination of all this discovery is insufficient or how their sweeping request for classwide data is nevertheless "narrowly drawn to meet specific needs for information" from a non-party. *Axel Springer SE*, 2018 WL 5734670, at *3.

The authorities on which Plaintiffs rely in support of their claim that they are entitled to classwide data from a non-party such as Meta miss their mark. In *In re Samsung Electronics Co, Ltd.*, defendant Samsung sought discovery of non-party Apple's source code to show that the first-generation iPhone's functionality invalidated plaintiffs' patent and their patent infringement claims against Samsung. No. 22 Misc. 80005, 2022 WL 425579, at *1-2 (N.D. Cal. Feb. 11, 2022). The case had nothing to do with a demand for classwide data that would potentially involve millions of users' data. In *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, plaintiffs alleged they were overcharged as a result of a price-fixing conspiracy involving computer equipment and sought third-party sales data to show how retailers passed the cost of these overcharges onto consumers. No. 19 MD 02918, 2021 WL 4621755, at *1-2 (N.D. Cal. Oct. 5, 2021). The case had nothing to do with production of data associated with the online activities of potentially millions of putative class members.

### C.    Plaintiffs' Demand for Putative Classwide Data is Unduly Burdensome

Plaintiffs' demand for putative classwide discovery should be denied for the independent reason that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii). Plaintiffs have failed to show any substantial need for even one day of putative classwide data, let alone the 90 days of data they seek. And whatever minimal benefit there may be to requiring Meta to produce putative classwide data does not outweigh the significant burdens that Meta would incur, particularly given Meta's non-party status and that no class has yet been certified.

Plaintiffs ask the Court to compel production of all Pixel event data received from Patreon associated with all putative class members between April 1, 2022 to July 31, 2022. Motion at 2, 4, 10-11. That production would ███████████████████████████████ ███████ Declaration of Gerardo Zaragoza ¶ 4 ("Zaragoza Decl."). ██████████████

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

███, it would take Meta's data scientists and in-house counsel approximately three weeks to prepare such a production. Zaragoza Decl. ¶ 5. For class certification, Plaintiffs may rely on the data Meta already has produced coupled with deposition testimony from Meta's 30(b)(6) witness, any discovery obtained from Patreon, and evidence from Plaintiffs' own investigation. There is no justification for requiring a non-party like Meta to incur the burdens of producing this data.

Meta also respectfully asks the Court to consider the cumulative burden Meta may experience if Meta is required to produce putative classwide data in this action. Meta has received numerous third-party subpoenas from plaintiffs in other class action cases that involve similar VPPA claims. Edelstein Decl. ¶ 17. Compelling Meta to produce putative classwide data here would expose Meta to requests for classwide data in similar cases, which could amount to the production of a massive amount of data in actions in which Meta is not a party. It would be inequitable to require a non-party like Meta to become a clearing-house for class action litigation, particularly where there has been no adjudication of the merits, no class has been certified, and Plaintiffs can address class certification issues through alternative means.

### D. Plaintiffs' Demand for Putative Classwide Data is Incompatible with the VPPA

Plaintiffs' motion also is incompatible with the requirements of the VPPA, which Plaintiffs are seeking to enforce. Indeed, it is somewhat ironic that Plaintiffs are seeking disclosure of information that may contain confidential information of millions of individuals whom they do not yet represent at the same time that they are accusing Patreon of having violated those individuals' privacy rights.

Although Meta is not a party to this suit, Plaintiffs' subpoena and the claims and defenses in this case put Meta in a prejudicial bind. Patreon asserts in its eleventh affirmative defense that "any disclosure made by Patreon was done for the exclusive use of marketing goods and services directly to the consumer." Patreon's Answer, ECF No. 63, at 13. Patreon is referring to section 2710(b)(2)(D)(ii), which allows a video tape service provider to make certain disclosures about consumers (subject to the consumers' right to opt-out) "if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(ii). But under the VPPA, a third party that receives such disclosures becomes by definition a "video tape service

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

provider" with respect to those disclosures only and is subject to the VPPA's notice requirements with respect to those disclosures, even if that third party does not otherwise qualify as a video tape service provider and is not otherwise subject to the VPPA.  *See* 18 U.S.C. § 2710(a)(4).[4]  Although it is disputed whether the VPPA applies at all to Patreon's disclosures, it remains a live issue in the underlying case whether the "marketing goods and services" exception applies and thus whether Meta is a "video tape service provider" with respect to Patreon's disclosures.

Under the VPPA, all video tape service providers must observe the requirements of section 2710(b)(2)(F), which limits their ability to disclose users' data pursuant to a court order in a civil proceeding.  Section 2710(b)(2)(F) states that a video tape service provider may disclose PII concerning any consumer "pursuant to a court order, in a civil proceeding" only "upon a showing of compelling need for the information that cannot be accommodated by any other means" and only after the consumer is given notice and an opportunity to be heard to contest the disclosure.  18 U.S.C. § 2710(b)(2)(F).  If this Court were to order Meta to disclose the information Plaintiffs seek without following the procedures required by the VPPA, Meta would be prejudiced if the court were to hold that the VPPA applies and that Patreon's defense is correct.  Patreon users could then argue that *Meta* violated the VPPA by complying with this Court's order compelling production of their data.[5]

The solution is to deny Plaintiffs' motion to compel.  *See Amazon.com LLC* v. *Lay*, 758 F. Supp. 2d 1154, 1170 (W.D. Wash. 2010) (denying the North Carolina Department of Revenue's request that Amazon "disclose the personally identifiable information about its customers" related to their video purchases).  Plaintiffs have failed to establish any compelling need for information

---

[4] The VPPA defines "video tape service provider" to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, *or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.*"  18 U.S.C. § 2710(a)(4) (emphasis added).

[5] Patreon makes a similar argument in support of its motion for summary judgment challenging the constitutionality of the VPPA.  Patreon argues that it "cannot even tell the Court the titles of the particular videos plaintiffs watched without getting their consent or obtaining an order.  And if the case proceeds to class discovery, Patreon would be prohibited from producing such information about absent class members – even to class counsel – unless all putative class members first received notice and had an opportunity to oppose."  Patreon's Mot. for Summ. Judg., ECF No. 76, at 10.

from Meta that could not be accommodated through other means (including through deposition testimony).  And the procedures the VPPA requires—which would involve giving Patreon users notice and opportunity to be heard—are not feasible under the circumstances given the number of potentially affected users at issue and the painstaking process that would be required to identify, notify, and allow each one of these users to be heard.  Further, it is highly doubtful that these notice procedures could be completed in time to support Plaintiffs' motion for class certification due on March 15, 2024, Plaintiffs' only asserted need for the information.  Motion at 1, 6, 11.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel deposition testimony, the Court should deny Plaintiffs' motion to compel deposition testimony as moot.  The Court should deny Plaintiffs' motion to compel production of putative classwide data as beyond the scope of permissible discovery.

Dated: January 15, 2024                        Respectfully submitted,

                                               JENNER & BLOCK LLP


                                        By:    */s/ Laurie Edelstein*

                                               Laurie Edelstein (Bar No. 164466)
                                               Paige Zielinski (Bar. No. 318639)
                                               JENNER & BLOCK LLP
                                               455 Market Street, Suite 2100
                                               San Francisco, California 94105
                                               Telephone: (628) 267-6800
                                               ledelstein@jenner.com
                                               pzielinski@jenner.com

                                               *Attorney for Meta Platforms, Inc.*

**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5-1(b), I hereby certify that on the 15th day of January, I authorized a copy of the foregoing **NON-PARTY META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** and supporting documents to be filed electronically via the Court's CM/ECF system and served on all parties of record who have made an appearance in this case and are registered for participation in CM/ECF as of this date. I also caused a sealed version of foregoing document to be served by electronic mail on all parties of record who have made an appearance in this action and also on counsel of record for Patreon, Inc. in *Stark* v. *Patreon, Inc.*, No. 22 Civ. 3131 (N.D. Cal.).

Dated: January 15, 2024

                                         */s/ Laurie Edelstein*
                                         Laurie Edelstein